J-S58017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF K.L.L., MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.L.E., NATURAL MOTHER | No. 931 MDA 2015 |

Appeal from the Decree entered May 15, 2015,
in the Court of Common Pleas of Clinton County, Orphans'
Court, at No(s): 17-2014 OC

BEFORE: GANTMAN, P.J., OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                     **FILED OCTOBER 14, 2015**

Appellant, E.L.E., ("Mother") appeals from the decree entered on May 15, 2015 in the Court of Common Pleas of Clinton County, denying her petition to involuntarily terminate the parental rights of Appellee, L.D.L. ("Father"), to K.L.L. ("Child"). We affirm.

Mother and Father were married in June of 2009. In July of 2009, Mother and Father became the biological parents of twin girls, C.L. and A.L.[1] Mother and Father separated in the fall of 2011. On August 22, 2011, Mother filed a complaint for divorce. Father filed an answer and counterclaim seeking custody of C.L. and A.L. Child was born in July of 2012. On August 20, 2012, the trial court entered an order confirming that Father was Child's biological father. On August 21, 2012, the trial court

---

* Retired Senior Judge assigned to the Superior Court.

[1] On August 13, 2012, the trial court granted Mother primary custody of C.L. and A.L., and granted Father partial custody of C.L. and A.L.

directed Father to pay child support for Child, effective July 25, 2012. Father has continued to pay child support for Child, and C.L. and A.L. since July 25, 2012. Mother and Father were divorced in September of 2013.

On December 11, 2014, Mother filed a petition to involuntarily terminate Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Mother married B.E. in January of 2015. On March 20, 2015, the trial court held a hearing on the termination petition. At the hearing, Mother, Father, and B.E. testified. On May 15, 2015, the trial court entered its decree denying the petition to terminate Father's rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1).

On June 1, 2015, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Mother raises the following issues for our review:

1. Whether the trial court committed an abuse of discretion and/or an error of law in finding that Mother failed to establish by clear and convincing evidence that termination of Father's parental rights was appropriate pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

2. Whether the trial court committed an abuse of discretion and/or an error of law in finding that Mother had obstructed Father from initiating contact with Child since birth, and that Father's failure to perform parental duties was due to the actions of and/ or obstacles created by Mother?

Mother's Brief at 4.

When reviewing a decree involving terminating parental rights, our standard of review is well settled:

> In cases involving termination of parental rights[,] our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. ... We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re Z.P.,* 994 A.2d 1108, 1115 (Pa. Super. 2010) (citations and quotations omitted).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2006). We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re*

- 3 -

*Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). As Mother's

petition for termination of Father's parental rights was based on Section

2511(a)(1) and (b), we will focus on those subsections for our review.

Section 2511(a)(1) and (b) provide:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child
may be terminated after a petition filed on any of the following
grounds:

(1) The parent by conduct continuing for a period of at
least six months immediately preceding the filing of the
petition either has evidenced a settled purpose of
relinquishing parental claim to a child or has refused or
failed to perform parental duties.

\* \* \*

**(b) Other considerations**.--The court in terminating the rights
of a parent shall give primary consideration to the
developmental, physical and emotional needs and welfare of the
child. The rights of a parent shall not be terminated solely on
the basis of environmental factors such as inadequate housing,
furnishings, income, clothing and medical care if found to be
beyond the control of the parent. With respect to any petition
filed pursuant to subsection (a)(1), (6) or (8), the court shall not
consider any efforts by the parent to remedy the conditions
described therein which are first initiated subsequent to the
giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency

of the evidence to support the involuntary termination of a parent's rights

pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of [S]ection 2511(a)(1), the moving
party must produce clear and convincing evidence of conduct,

sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with. . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted), *appeal denied*, 872 A.2d 1200 (Pa. 2005).

On appeal, Mother argues that the trial court erred by denying termination of Father's parental rights to Child. Mother's Brief at 11. Specifically, Mother contends the trial court erred in concluding that Father's failure to perform parental duties was due to Mother's actions. Mother's Brief at 15-19.

In denying termination of Father's parental rights pursuant to Section 2511(a)(1), the trial court reviewed the record and the evidence presented, and concluded that it is clear from the record that Father's "parental inaction and lack of interest in excess of six months" did not establish a settled purpose to relinquish parental rights. Trial Court Opinion, 5/15/2015, at 7 (unpaginated).

The trial court determined:

- 6 -

In December 2012, Father attempted to deliver Christmas gifts to [Child] but was met with total resistance by Mother when Mother threw the gifts in the back of Father's truck, calling them 'irrelevant.' Mother argued that Father's home was not suitable for [Child] to visit, and Father was required to undergo a home inspection. Father relocated to a county adjacent to Mother's home county in an effort to be closer to [Child] and her sisters. Father made improvements to his residence, which included a separate bedroom for [Child]. Father and his family bought Christmas gifts for [Child] in December 2014. Father specifically asked Mother, via text messaging, to set up a custody schedule with [Child] on December 4, 2014, which resulted in Mother filing a [p]etition to [t]erminate Father's [p]arental [r]ights on December 11, 2014. The [trial c]ourt finds Mother's testimony to be untrustworthy as Mother initially testified under oath that Father's inquiry came on December 18, 2014, a week after she filed her [p]etition when, in fact, the opposite is true. Mother's [p]etition for [t]ermination of [p]arental [r]ights was clearly in response to Father's inquiry to set up a formal schedule with [Child].

*Id.* at 8 (unpaginated).

Mother testified to the following. Father directed her not to contact him about the birth of Child. N.T., 3/20/2015, at 13. There was a question of paternity concerning whether Father was Child's biological father. *Id.* at 30. On August 20, 2012, an order was entered providing that Father is Child's biological father. In September of 2012, Mother's attorney received a letter from Father requesting Child be included in the custody order with C.L. and A.L. *Id.* at 33. During Christmas of 2012, she refused Christmas gifts Father had for Child. *Id.* at 34. She refused the gifts because Father never met Child, and the gifts were "irrelevant." *Id.* at 35. Between Christmas of 2012 and when Mother filed the petition to terminate Father's rights, Father never made an effort to contact Child. *Id.* at 35. Father indicated to her

that he constructed an additional bedroom in his home for Child after she filed the petition to terminate Father's paternal rights. *Id.* at 40.

Father testified to the following. Mother had sexual relations with other men following the parties' initial separation in September of 2011. *Id.* at 62. Father questioned whether Child was his biological child due to Mother's relationship with another man. *Id.* at 63. Father paid child support for Child and attempted to have contact with Child following the paternity test determining that Child was his biological child. *Id.* at 63-64. Father made several attempts with Mother to have contact with Child, either verbally, in-person, on the phone, or through text messages. *Id.* at 65. Father sent a letter to Mother's attorney requesting contact with Child. *Id.* In December of 2012, he attempted to give Child presents, and Mother "threw them in the back of [Father's] truck." *Id.* at 66-67. In May of 2014, Father moved to a new home to be closer to Child, making a forty-five minute commute into a ten-minute drive. *Id.* at 67. During the construction of his new home, he constructed an additional bedroom for Child. *Id.* at 68. On December 5, 2014, he texted Mother to make a custody arrangement for Child and to inform her that Child's room was finished. *Id.* at 71. Father did not pursue court proceedings with respect to Child because he did not have the financial resources to pursue custody, and he wanted to arrange a custody agreement out of court. *Id.* at 72.

The trial court determined Father testified credibly that he attempted to see Child. Moreover, the trial court found Mother placed barriers in Father's path, and that Mother's testimony was not credible. We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding Father's testimony credible. *In re M.G.*, 855 A.2d at 73-74. Moreover, the competent evidence in the record supports the trial court's determinations that Father did not engage in a course of conduct that demonstrated a settled purpose of relinquishing his parental rights, nor has he refused or failed to perform parental duties. *See* 23 Pa.C.S. § 2511(a)(1). Accordingly, we can discern no abuse of discretion or error of law in the trial court's conclusion. *See id.*

Because we find that the trial court did not abuse its discretion in concluding that Father's conduct did not warrant the termination of his parental rights, there is no need to engage in a Section 2511(b) analysis. *See In re P.Z.*, 113 A.3d 840, 850 (Pa. Super. 2015) (only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)). Therefore, we affirm the decree denying the petition for termination of Father's parental rights.

Decree affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015