J-S08043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ADOPTION OF T.J.F., B.I.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  C.L.W., Natural Mother | : | No. 1327 WDA 2015 |

Appeal from the Order dated July 23, 2015
in the Court of Common Pleas of Cambria County,
Orphans' Court Division, No(s): 2015-463 IVT; 2015-462 IVT

BEFORE:  STABILE, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED FEBRUARY 29, 2016**

C.L.W. ("Mother") appeals from the Order granting the Petition filed by Cambria County Children and Youth Service ("CYS") to involuntarily terminate her parental rights to her minor children, B.I.R., a son born in November 2010, and T.J.F., a son born in August 2012 (collectively, "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1] We affirm.

In September 2012, just after T.J.F. was born, CYS received a report that Mother was attempting to leave T.J.F. at the hospital while he was going

---

[1] CYS also included J.W., Mother's husband ("Husband"), S.R., the putative father of T.J.F., and R.S., the putative father of B.I.R in its Petition.  A DNA test confirmed that Husband was not the biological father of either child. Husband agreed to voluntarily terminate any potential rights to Children, and consented to Children's adoption.  DNA tests were also completed for two additional individuals, but the results indicated that they could not be the biological father of either child.  As the location of both S.R. and R.S. remained unknown, CYS provided notice of the hearing through publication in a local newspaper.  At the time of the termination Hearing on July 17, 2015, CYS was still unable to locate either putative father.

through nicotine withdrawal. *See* N.T., 7/17/15, at 14; *see also* Case Record Summary at 2. CYS did not become involved at this time because Mother returned for T.J.F. and was providing for his needs. *See* N.T., 7/17/15, at 14.

In October 2012, CYS received a report that B.I.R. had a severe bacterial infection, and Mother refused to allow him to be hospitalized to receive the necessary IV antibiotics. *See id.* at 15-16. CYS referred the case to Ohio, where Mother was residing at the time. *See id.* CYS received another report regarding B.I.R.'s medical condition in December 2012, when Mother had refused to fill his prescription. *See id.* The report was closed because CYS was unable to locate Mother. *See id.*

In January 2013, CYS received another report, which included concerns about Mother's drug abuse, criminal charges, lack of medical care for Children, and inadequate housing. *See id.* CYS initiated services at that time, and developed a Family Service Plan ("FSP") for Mother. *See id.*

In July 2013, Mother was arrested for robbing a Dollar Store. *See id.* at 17. Mother subsequently consented to a search of the home. *Id.* Based on items found during search, Mother was charged with child endangerment, drug possession, and possession of drug paraphernalia. *See id.* at 17-18. The day after Mother's arrest, CYS developed a Safety Plan, which indicated that Children's maternal grandmother ("Grandmother") would be responsible

for their care. *See id.* at 18. CYS filed Dependency Petitions in the interest of Children on July 27, 2013.

In August 2013, while under Grandmother's care, B.I.R. missed a medical appointment to receive treatment for an abscess. *See id.* at 20-21. Four days later, B.I.R. was admitted to the hospital with MRSA. *See id.* at 21.

On August 21, 2013, Children were adjudicated dependent and entered placement. *See id.* at 17, 20-21. After Children were adjudicated dependent, CYS developed a new FSP and a permanency plan.

CYS caseworker Brittney Corson ("Corson") testified that Mother was required to participate in various social work services through CYS to assist with her parenting issues, and to address concerns relating to her criminal history and inappropriate housing. *See id.* at 21-22. Mother was also required to cooperate with Independent Family Services ("IFS") and submit to drug screenings. *See id.* at 22. Additional FSP requirements included maintaining a clean, safe, and adequately furnished home for a minimum of 6 months, paying bills on time, and fully complying with all drug and alcohol program recommendations. *See id.* at 26.

Corson testified that Mother refused to submit to drug screening on multiple occasions and tested positive on three screenings. *See id.* Additionally, Corson stated that Mother completed inpatient drug and alcohol

treatment. ***See id.*** at 23. Mother also began outpatient treatment, but was discharged for noncompliance with the facility's rules. ***See id.*** at 24.

IFS initiated home management services with Mother in June 2013. Kathy Scaife ("Scaife"), the family's IFS field worker at that time, described Mother's case as "critical." ***See id.*** at 60. IFS's goals for Mother included establishing financial stability and relocating to public housing. ***See id.*** Mother was unable to obtain public housing because she did not satisfy the requirements of the application process. ***See id.*** at 61; ***see also*** Case Record Summary at 4. Scaife testified that IFS subsequently attempted to help clean out Grandmother's home, as it was in a "hoarder-like" condition. ***See*** N.T., 7/17/15, at 62. Scaife stated that these efforts were unsuccessful because Grandmother was not willing to remove her belongings, and Mother was uncooperative because she "was hiding from someone." ***See id.*** Scaife also testified that Mother seemed to be unmotivated to make any changes without IFS support. ***See id.*** at 63.

Kathy Pittman ("Pittman"), the family's social worker, testified that her goal was to help Mother maintain sobriety and work on coping skills. ***See id.*** at 53. Pittman indicated that Mother was initially uncooperative, but she improved for a few months before becoming noncompliant again. ***See id.*** at 55. Additionally, Pittman testified that Mother did not have consistent drug and alcohol treatment or mental health treatment. ***See id.*** at 56.

The trial court held four permanency review hearings after Children were adjudicated dependent. From August 21, 2013, until September 23, 2014, Mother was allowed to participate in bi-weekly visits with Children. Corson testified that Mother attended 14 out of 26 possible visits. *See id.* at 31. At the third permanency review hearing on September 23, 2014, the trial court found that Mother had been minimally compliant with the permanency plan, and changed the permanency goal from reunification to adoption.[2] After the permanency goal change, Mother was permitted to have monthly visitation with Children. Corson testified that Mother attended 7 out of 9 possible monthly visits. *See id.* at 31. Additionally, Corson stated that the majority of the unattended visits from August 2013 were a result of Mother's incarceration. *See id.* at 31-32, 42.

On May 12, 2015, CYS filed an Involuntary Termination of Parental Rights ("ITPR") Petition against Mother pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Following a hearing, the trial court granted the Petition. Mother filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Mother raises the following question for our review: "Whether the [trial c]ourt either abused its discretion or committed an error of law when it granted the [ITPR] Petition [], thereby terminating the parental rights of [Mother] to [Children][?]" Mother's Brief at 2.

_____

[2] IFS services were terminated by CYS after the permanency goal was changed to adoption.

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

- 6 -

Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon Section 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by a parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation

- 7 -

to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (internal quotations and citations omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

Mother claims that the trial court erred in granting the ITPR Petition because DHS did not satisfy, by clear and convincing evidence, that her parental rights should be terminated under Section 2511(a). Mother's Brief at 3-12. As to the requirements of subsection (a)(1), Mother argues that she did not evidence a settled purpose in relinquishing her parental claim, but in fact took affirmative steps toward being reunited with Children. *Id.* at 6-7. Mother claims that she sought help for her drug problems and mental health issues, and that she had secured housing and employment. *Id.* at 6. Further, Mother asserts that she took advantage of all of resources made available to her. *Id.* at 6-7; *see also id.* at 6 (wherein Mother argues that she neither refused nor failed to perform her parental duties where CYS limited her visits with Children).

As noted above, CYS provided Mother with a multitude of services to help her preserve her parental rights and work towards reunification. In fact, the Case Record Summary lists 25 different services offered to Mother. Upon our review, we conclude that the evidence of record and the testimony of Corson, Scaife and Pittman support the trial court's conclusion that CYS satisfied its burden pursuant to 2511(a)(1). ***See In the Interest of J.T.***, 938 A.2d at 777; ***see also In re K.Z.S.***, 946 A.2d at 760-62.

Additionally, in regard to Mother's claim that the court failed to consider that she has secured housing and employment after receiving notice of the filing of the ITPR Petition, we note that the trial court is prohibited from considering these efforts. ***See*** 23 Pa.C.S.A. § 2511(b) (stating that "[w]ith respect to any petition filed pursuant to subsection (a)(1), … the court shall not consider any efforts by a parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."); ***see also In re I.E.P.***, 87 A.3d 340, 348 (Pa. Super. 2014). Here, CYS filed the Petition on May 12, 2015. CYS notified Mother of the termination hearing on June 19, 2015. Mother testified that she moved into a two-bedroom apartment on June 30, 2015. ***See*** N.T., 7/17/15, at 79. Mother also testified that she obtained a part-time job at Dollar Tree, which she was scheduled to begin the day after the termination hearing. ***See id.*** at 81.

Therefore, at the time CYS filed the Petition, Mother was still unemployed and living at Grandmother's house, which the trial court had determined was "unlivable." Thus, the trial court properly disregarded this evidence with regard to section 2511(a)(1). *See* 23 Pa.C.S.A. § 2511(b); *see also In re I.E.P.*, 87 A.3d at 348.[3]

Accordingly, the trial court did not err in granting the ITPR Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/29/2016

---

[3] We note that Mother does not raise a claim regarding the best interests of Children under section 2511(b). Nevertheless, the record supports the trial court's determination that termination of Mother's parental rights would serve the developmental, physical, and emotional needs of Children pursuant to section 2511(b). *See In the Interest of I.E.P.*, 87 A.3d at 352.