J-S88016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.E.D.L., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 744 EDA 2016 |

Appeal from the Order Entered February 5, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000772-2015,
CP-51-DP-0000323-2014, FID: 51-FN-000-284-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: N.T.L., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 745 EDA 2016 |

Appeal from the Order Entered February 5, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000769-2015,
CP-51-DP-0001341-2014, FID: 51-FN-000-284-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M.L., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 746 EDA 2016 |

Appeal from the Order Entered February 5, 2016
In the Court of Common Pleas of Philadelphia County

J-S88016-16

| | | |
|---|---|---|
| IN THE INTEREST OF: D.N.L., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 747 EDA 2016 |

Appeal from the Order Entered February 5, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000771-2015,
CP-51-DP-0001343-2014, FID: 51-FN-000-284-2014

BEFORE: OLSON, RANSOM, and STRASSBURGER[1], JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 23, 2017**

Appellant, M.L., ("Mother"), appeals from the order in the Philadelphia County Court of Common Pleas, which terminated her parental rights to her minor children, M.E.J.D.L., N.T.L., T.M.L., and D.N.L., pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and 2511(b). After a thorough review of the record, we affirm.

The relevant facts are as follows:

The family in this case became known to [the Department of Human Services] DHS on November 11, 2013, when DHS received a substantiated General Protective Services ("GPS") report alleging that Mother's home was without heat or food, and that [M.E.J.D.L.] had cerebral palsy and was left alone or with inappropriate caregivers. Another GPS report was received by

_____

[1] Retired Senior Judge assigned to the Superior Court.

- 2 -

DHS on December 6, 2013, alleged that [M.E.J.D.L.] was missing medical appointments. Over the course of 2013, [M.E.J.D.L.] missed thirteen medical appointments. DHS filed an urgent petition for [M.E.J.D.L.] on February 5, 2014. [M.E.J.D.L.] was adjudicated dependent and committed to DHS on March 7, 2014. She was placed with E.L. ("Foster Mother"), her maternal grandmother. [M.E.J.D.L.] is a very medically needy child. Mother was present at the time of the adjudication, where the court ordered her to attend substance abuse treatment. In March 2014, Mother began attending Caton Village, an inpatient substance abuse treatment facility. Mother was allowed to have the three other Children reside with her at the inpatient facility. Mother's goals under the April 16, 2014, Family Service Plan ("FSP") were to participate in family therapy, stabilize mental health, attend drug and alcohol treatment, maintain sobriety and secure safe living conditions for the Children. Father's FSP goals were to obtain housing, attend all hearings and ensure the Children attend all medical appointments. On May 9, 2014, another GPS report alleged that Mother used physical discipline against the Children. The treatment facility sought to transfer Mother elsewhere because of altercations with other patients. Foster Mother removed the three children from the treatment facility on May 20, 2014, and Mother left the program the same day without successfully completing treatment, against medical advice. On June 2, 2014, DHS filed urgent petitions for N.T.L., T.M.L. and D.N.L. These three children were adjudicated dependent on June 18, 2014. They were committed to DHS and placed with Foster Mother. The court also ordered Mother and Father to the Achieving Reunification Center ("ARC") for additional services, and Mother was ordered to the Clinical Evaluation Unit ("CEU") for forthwith drug screen and dual diagnosis assessment. Both parents were offered supervised visitation. Over the next year, Mother and Father were found non-compliant at every permanency review. The trial court found at every review that DHS had made reasonable efforts to reunify the family. DHS filed petitions to involuntarily terminate Mother's and Father's parental rights, and to change the Children's permanency goals to adoption on October 29, 2015.

Trial Court Opinion, 4/20/16 at 1-2.

At the hearing, the trial court terminated Mother's parental rights as to all four children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), as well as 2511(b), and changed the children's goal to adoption. On March 7, 2016, Mother's counsel timely filed a notice of appeal as well as a statement pursuant to Pa.R.A.P. 1925(b).

Mother raises the following issues on appeal:

A.   Whether the court erred in failing to find that for six months immediately preceding the filing of the petition, when [A]ppellant [M]other's child was bonded with her and [A]ppellant [M]other and did not intend to relinquish her claim to her child or refused and/or failed to perform parental duties.

B.   Whether the court erred in failing to find that for the six months immediately preceding the filing of the petition [A]ppellant [M]other had contact and visits with her child, [A]ppellant [M]other's child was bonded with her.

C.   Whether the court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of this minor child by [A]ppellant mother, when [A]ppellant [M]other's child was bonded with her.

D.   Whether the court erred in finding that the conditions which led to the removal or placement of the child continue to exist, when [A]ppellant [M]other's child was bonded with her.

E.   Whether the court erred in finding that the conditions which led to the removal or placement of the children continue to exist and termination of parental rights would best serve the needs and welfare of the child, when [A]ppellant [M]other can remedy the conditions within a reasonable period of time, when mother's child was bonded with her.

F.   Whether the court erred in finding that DHS made reasonable efforts toward reunification, by either failing

- 4 -

and/or refusing to help find a viable option or to consider options other than terminating [M]other's parental rights, when [M]other's child was bonded with her.

G. Whether the court erred in terminating the rights of [A]ppellant [M]other, when the sole reason she was unable to obtain housing, and provide medical care for the care and maintenance of the child, was her lack of income.

H. Whether the court erred in terminating the rights of [A]ppellant [M]other where it was not supported by clear and convincing evidence and not in the best interest of the child, and there was a bond between [A]ppellant [M]other and child and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the child, pursuant to 23 [Pa. C.S.A.] Section 2511(b).

I. Whether the errors committed by the court below deprived [A]ppellant of her rights to due process and equal protection under the law.

Appellant's Brief at 6-7 (unpaginated).

Our standard of review regarding orders terminating parental rights is

as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence[2] that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d at 806.

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. and J.G., Minors*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B., Jr.*, 835 A.2d 387, 394 (Pa. Super. 2003).

While Mother's appeal raises issues pertaining to all of the grounds for termination, this Court may affirm the trial court's decision with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 20014) (*en banc*). As such, we will focus on Section 2511(a)(8) and 2511(b), which provide as follows:

## § 2511. Grounds for involuntary termination

---

[2] The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. and J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

> **(a)** **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> **(b) Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

We first examine the court's termination of Mother's parental rights pursuant to Section 2511(a)(8). In order to terminate parental rights under Section 2511(a)(8), the court conducts a three-part analysis in which it is determined whether the agency has proven by clear and convincing evidence:

> "(1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions

> which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child."

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003).

M.E.D.L. was removed from her Mother's care and custody and placed in DHS custody on March 7, 2014. N.T.L, T.M.L, and D.N.L., were removed from their Mother's care and custody and placed in DHS custody on June 18, 2014. All of the children were placed in the same foster home where they have remained since being committed to the care of DHS. All four children have been removed from Mother's care for well over twelve months. Thus, the first prong in ***In re M.E.P.*** for the requirements of section 2511(a)(8) was clearly satisfied.

The conditions that led to the children's removal and placement continue to exist. At the time the children came into care, Mother's FSP objectives were to participate in a drug and alcohol evaluation, a mental health evaluation, parenting classes, attend scheduled visitation, and obtain housing. Notes of Testimony (N.T.), 12/11/15, at 30. At the time of the filing of the termination petitions, Mother had completed none of her objectives. At every court hearing, Mother was referred to CEU for evaluation and has never attended. ***Id.*** She failed to receive mental health treatment or attend parenting classes. ***Id.*** at 31-32. The children were in care over twelve months, and Mother attended one supervised visit lasting only twenty minutes. ***Id.*** at 33.

- 8 -

Mother contends that she completed most of her objectives and was moving towards reunification. ***See*** Appellant's Brief at 10, 12 (unpaginated). In terminating parental rights under Section 2511(a)(8), the trial court is not required to evaluate a parent's current "willingness or ability to remedy the conditions that initially caused placement." ***In re Adoption of T.B.B.***, 835 A.2d at 396; ***see also In re Adoption of M.E.P., supra***, at 1276. However, by Mother's own admission she does not have housing, has not participated in mental health treatment, and stopped coming to court because she wanted Foster Mother to raise her children. N.T. at 101-102. Mother has demonstrated a pattern of noncompliance with her FSP objectives. Therefore, the conditions which led to removal continue to exist.

We must now consider whether the trial court abused its discretion in concluding that DHS proved, by clear and convincing evidence, that "termination of parental rights would best serve the needs and welfare of the child."

> With respect to the "needs and welfare" analysis pertinent to Sections 2511(a)(8) and (b) we have observed: [I]nitally, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent.

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (citations omitted).

We discern that there was ample testimony in the record from which the trial court appropriately concluded that termination of Mother's parental rights best served the needs and welfare of the children. In her testimony, Rimani Peace, DHS social worker, testified that Mother only made one supervised visit with her children, nine days before the termination hearing. N.T. at 33-34. Since the children's removal, Mother has not completed any of her FSP objectives, does not have appropriate housing, failed to complete a drug and alcohol program, and did not comply with court-ordered drug screens. As such, the conditions that led to removal continue to exist, and Mother has done nothing to meet the needs and welfare of the children. We agree with the trial court that "termination of Mother's parental rights was in the best interest of the Children for their physical, intellectual, moral and spiritual well-being." Trial Court Opinion at 12.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

Kristen Jenkins, Children's Choice social worker, testified that she observed Mother's only supervised visit, which occurred after the children had been in care for eighteen months and lasted merely twenty minutes. N.T. at 66. Based on the lack of visitation, Ms. Jenkins reasoned that the children did not maintain an attachment to Mother. Thus, they would suffer no irreparable harm if Mother's rights were terminated. *Id.* at 67. Furthermore, Ms. Jenkins testified that the children look to Foster Mother to meet all of their needs. *Id.* at 68. The children view Foster Mother as the parental figure in their lives. *Id.*

As there is competent evidence in the record that supports the trial court's credibility and weight assessments that severing the bond with Mother would not cause the children irreparable harm, we conclude that the trial court did not abuse its discretion in terminating Mother's parental rights to the Children with regard to section 2511(b).

Mother's final claim, as set forth in her statement of questions presented, reads as follows:

I. Whether the errors committed by the court below deprived [A]ppellant of her rights to due process and equal protection under the law.

Appellant's Brief at 4 (unpaginated). Mother's argument that purportedly addresses this issue is vague and underdeveloped, cites no case law, and fails to explain the basis for this question. Under these circumstances, we decline to consider the merits of this claim. *See Fielding v. Fielding*, 685

A.2d 178, 179 (Pa. Super. 1996) (citing *Smathers v. Smathers*, 670 A.2d 1159, 1160 (1996) (noting that we will not consider the merits of issues that are not properly raised and developed in appellant's brief)).

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/2017