855 A.2d 68 (2004)
In re: M.G. & J.G., Minors.
Appeal of: P.G. Natural Mother, Appellant.
Superior Court of Pennsylvania.
Submitted March 15, 2004.
Filed July 1, 2004.
Reargument Denied September 3, 2004.
*69 Theodore A. Morris, Williamsport, for appellant.
Eric R. Linhardt, Williamsport, Guardian Ad Litem, for appellee.
Charles R. Greevy, III, Williamsport, for Lycoming County, appellee.
Before: LALLY-GREEN, TODD and CAVANAUGH, JJ.
CAVANAUGH, J.
¶ 1 In what appears to be an issue of first impression, we are asked to determine *70 whether a social service agency charged with development and implementation of permanency plans for dependent children may properly petition to involuntarily terminate a mother's parental rights where the existing placement goal is reunification and where no change of goal to adoption has been previously sought.[1] We find that a goal change from reunification to adoption is not a necessary prerequisite to the initiation of involuntary termination proceedings. Moreover, we conclude that the court did not err in terminating appellant mother's parental rights. Accordingly, we affirm.
¶ 2 P.G. is the natural mother of M.G. (son), born on 8/1/90, and J.G. (daughter), born on 5/12/93. Son was adjudicated dependent in November of 1992 and daughter was adjudicated dependent in September of 1993. Mother and children were provided protective services through Children and Youth Services (CYS) of Lycoming County for a decade. Those provisions included repeated and extended periods of foster care for the children when mother was homeless as well as the placement of mother and children together in a family shelter. In-home services were provided after mother and children moved from the shelter to a public housing project where they resided for approximately three years before being evicted for failure to pay rent in May of 2001.
¶ 3 Son was adjudicated delinquent at age ten. By that time, he had undergone two in-patient psychiatric hospitalizations for behavior problems, suffered repeated infestations of head lice and had numerous episodes of truancy as well as episodes of shoplifting and assault, including an assault against his younger, severely handicapped brother.[2] Son was placed in foster care in May of 2001 and remains there. Although he still requires structure and medication to help with impulse control, his behavior is much improved since the placement. Daughter has a similar history of truancy, head lice and behavior problems requiring psychiatric hospitalization and the need for a structured environment. She was placed in foster care in January of 2002.
¶ 4 After May of 2001, mother lived at ten different addresses and held three different jobs, none for longer than seven months. Permanency planning reviews were conducted every six months after the children were placed in foster care and the goal always remained reunification. In June of 2003, CYS filed a petition to involuntarily terminate mother's parental rights. Hearings on the petition were conducted in August of 2003.
¶ 5 At the outset of those proceedings, mother's counsel moved to dismiss the termination petition on the ground that the most recent permanency goal, as set forth in the review conducted in March of 2003, was reunification. Counsel argued that because CYS had not petitioned to change the goal to adoption, its current petition to terminate mother's parental rights was premature. The court disagreed and denied the motion as follows:
THE COURT: Mr. Morris, I'm not sure whether you're aware of this or not, a couple or perhaps a few years ago it was the policy of the Agency to always petition the Court for a change of goal [from] reunification to adoption or termination before they filed their Petition for Termination. What was happening was *71 that on different occasions the Order granting the change of goal was appealed.
So we would, in effect, have two appeals in the same case; one on the change of goal and then later on the termination issue.
This Court, after reviewing the matter and studying the law on the matter, had a meeting with the Department of Children and Youth and suggested that the law in Pennsylvania was such that it need not petition to have a change of goal. This was researched by Mr. Greevy on behalf of the Agency and they agreed this was accurate and I believe they also checked with various other counties throughout the state and most of the counties in the state were not petitioning for a change of goal prior to filing a Petition for Termination.
Since that time the Agency has not filed a Petition for Change of Goal and just filed their Petition for Termination and this Court has upheld that as has the Appellate Courts so your Motion to Dismiss is denied.
¶ 6 Following three days of hearings, mother's rights were involuntarily terminated and she now appeals, setting forth the following issues for our review[3]:
1. IS THERE REVERSIBLE ERROR WHEN THE TRIAL COURT CAPRICIOUSLY DISREGARDS THE FACT THAT THE GOAL IN THE JUVENILE COURT IS STILL REUNIFICATION BUT THE AGENCY WAS PROCEEDING TO ORPHAN'S COURT TO TERMINATE THE APPELLANT'S RIGHTS AND DELAYED UNTIL AFTER THE FILING OF THE PETITION TO TERMINATE PARENTAL RIGHTS TO PERFORM A HOME STUDY?
2. DID THE TRIAL COURT ERROR [sic] AND CAPRICIOUSLY IGNORE EVIDENCE THAT IT WAS NOT IN THE BEST INTEREST OF THE CHILDREN TO TERMINATE APPELLANT'S PARENTAL RIGHTS AND BASE ITS CONCLUSION IN PART ON INCOMPETANT [sic] EVIDENCE?
3. DID THE TRIAL COURT ERROR [sic] AND CAPRICIOUSLY DISREGARD EVIDENCE THAT WOULD HAVE SHOWN THAT THERE WAS INSUFFICIENT GROUNDS TO TERMINATE THE APPELLANT[']S PARENTAL RIGHTS?
¶ 7 We begin our analysis of mother's first claim by recognizing that permanency planning for dependent children is conducted under the aegis of the Juvenile Court pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, et seq., and that adoption proceedings, which may include the involuntary termination of parental rights, are conducted under the aegis of the Orphan's Court pursuant to the Adoption Act, 23 Pa.C.S.A. § 2101, et seq. Specifically, permanency planning for dependent children is governed by section 6351 of the Juvenile Act and involuntary termination of parental rights is governed by sections 2511 through 2521 of the Adoption Act.
¶ 8 There is no express provision in any section of either act which requires that a termination petition be preceded by a goal change petition. Rather, a plain reading of the Juvenile Act suggests that one of the matters that may be determined at a six-month permanency hearing where the ostensible goal is reunification but the child has been in placement for an extended *72 period, is whether the social service agency has filed a termination petition. The pertinent statutory section provides:
At each hearing, the court shall:
....
(9) if the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated factors exist and that reasonable efforts to prevent or eliminate the need to remove the child from the home or to preserve and reunify the family need not be made or continue to be made, determine whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child[.]
42 Pa.C.S.A. § 6351(f)(9).
¶ 9 Here, at the six-month review hearing for daughter which took place in March of 2003, although the permanency goal remained reunification, it was determined that the only compelling reason "why a termination of parental rights has not been filed" was that "[c]hild has only been [in foster] care for thirteen months." Thereafter, in June of 2003, after daughter had been in foster care for sixteen consecutive months and son had been in foster care for twenty-five consecutive months, CYS filed the termination petition. Mother cites to no statutory prohibition which would preclude the filing of the petition and we see no procedural impropriety under the Juvenile Act or the Adoption Act.
¶ 10 Nonetheless, in addition to citation to a number of cases which set forth the well-established distinctions between considerations involved in determining the propriety of placement goals and those necessary to a disposition terminating parental rights, see e.g. In re A.L.D., 797 A.2d 326, 339-40 (Pa.Super.2002) (citing In the Interest of M.B., 388 Pa.Super. 381, 565 A.2d 804, 807-08 (1989)), mother seizes upon the following sentence contained in In re H.S.W.C.-B, 575 Pa. 473, 836 A.2d 908 (2003), to support her claim that CYS's actions were procedurally improper: "Proposed goal changes and petitions to terminate parental rights petitions [sic] are often sought concurrently; one cannot seek to terminate parental rights if the goal is still reunification." Id. at 911.
¶ 11 The sole issue before the supreme court in In re H.S.W.C.-B was "whether an order denying petitions to change a family goal from reunification to adoption and to terminate parental rights is final and therefore appealable." Id. at 909. In In re H.S.W.C.-B, CYS filed a goal change petition and a termination petition concurrently and the trial court denied both. Id. CYS appealed and this court quashed on the basis that the orders were not final because they merely maintained the status quo. Id. The supreme court granted the petition for allowance of appeal and reversed, holding that orders granting or denying goal changes, as well as orders terminating or preserving parental rights, are final and appealable when entered and remain in effect until overturned on appeal or rendered moot by a subsequent order. Id. at 911. Thus, because the supreme court was deciding a wholly unrelated issue, we conclude that any language in In re H.S.W.C.-B alluding to the propriety of seeking termination without having first sought a goal change is obiter dicta and is of no dispositional value in the case sub judice. See In re Melograne, 571 Pa. 490, 812 A.2d 1164, 1169 (2002).
¶ 12 Mother also appears to argue that the exclusive jurisdiction of the Juvenile Court over goal changes was improperly usurped by the Orphan's Court's consideration of the termination petition where the goal remained reunification. *73 We disagree and first note that the Juvenile Court and the Orphan's Court are simply divisions of the Court of Common Pleas and that, as a practical matter, goal change petitions and termination petitions often "go to the same trial judge." In re H.S.W.C.-B, 836 A.2d at 910. Indeed, the Honorable Clinton W. Smith, President Judge of the Lycoming County Court of Common Pleas, approved the March of 2003 permanency order setting forth the continuing reunification goal and sat as fact-finder at the August of 2003 termination proceedings. We conclude, given the statutory framework which sets forth an interplay in permanency goals between reunification on the one hand and adoption on the other, and the fact that President Judge Smith sat as both the Juvenile Court and the Orphan's Court in this matter, that there was no usurpation of jurisdiction by one court over the other as mother alleges.
¶ 13 Mother's reliance on In Interest of Patricia S., 326 Pa.Super. 434, 474 A.2d 318 (1984) is misplaced because, in that case, there was an attempt made by the prospective adoptive mother to "forum shop" which was, of course, seen as improper by this court. In Patricia S., after natural father's petition seeking reunification with daughter was granted by the Juvenile Court and natural father was granted visitation with daughter, prospective adoptive mother sought to block same by filing a petition for adoption in the Orphan's Court. Prospective adoptive mother also filed a petition in the Juvenile Court to stay its reunification order pending the outcome of the adoption proceedings. The Juvenile Court dismissed the petition seeking a stay and ordered the child fully reunited with father. Prospective adoptive mother appealed and a panel of this court affirmed the Juvenile Court's denial of relief under the unique circumstances of the case, holding that it could not permit attempts by a party to derail ongoing Juvenile Court proceedings. Id.
¶ 14 Here, we do not see CYS's filing a petition to terminate mother's parental rights as an attempt to derail ongoing Juvenile Court proceedings or reunification planning. Rather, we conclude that CYS properly filed the petition as per the considerations stated in the prior permanency review order entered by the Juvenile Court. Further we find that the record is replete with competent evidence upon which the trial court properly relied in its disposition of the petition and that the court did not err in concluding that termination was in the children's best interests.
¶ 15 Our scope and standard of review in cases involving the termination of parental rights are as follows:
In reviewing an order involving termination of parental rights, our scope of review is broad, and all the evidence as well as the hearing court's factual and legal determinations will be considered. The standard of review is limited to determining whether the decree of the lower court is supported by competent evidence and whether it gave adequate consideration to the effect of such a decree on the welfare of the child.
In re Adoption of S.M., 816 A.2d 1117, 1122 (Pa.Super.2003) (citations omitted). Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. In re Atencio, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).
We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or *74 none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.
In re Diaz, 447 Pa.Super. 327, 669 A.2d 372, 375 (1995) (quoting In re J.W., 396 Pa.Super. 379, 578 A.2d 952, 956 (1990)).
In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.
In re Julissa O., 746 A.2d 1137, 1139 (Pa.Super.2000) (quoting In re Adoption of Atencio, 650 A.2d at 1066 (citations omitted)).
¶ 16 CYS sought termination under any of the following statutory grounds:
§ 2511. Grounds for involuntary termination
(a) General Rule.The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
....
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
....
(8) The child has been removed from the care of the parent by the court, or under a voluntary agreement with the agency, 12 months have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the children continue to exist and termination of parental rights would best serve the needs and welfare of the child.
23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8).
¶ 17 Mother's argument in support of her contention that grounds for termination were not shown by the clear and convincing standard is made without citation *75 to any authority and is comprised of one paragraph consisting of fifteen lines on a single page of her brief. Mother's argument, at its essence, appears to be that her past inadequacies as a parent are not necessarily an indicator that she will be unable to adequately parent in the future. We disagree and conclude that the evidence, which showed a ten-year history of mother's lack of skill resulting in constant debilitating instability in the lives of her children, was sufficient to show mother's deficiencies to be irremediable.
¶ 18 Mother also argues that the court did not properly consider the effect termination would have on the children and that termination was not in their best interests. Again, we disagree and find that the court did, in fact, consider the developmental, physical and emotional needs and welfare of the children and the effect termination would have on them. While the record showed, and the court recognized, that there is a bond between mother and children, we will not disturb the court's conclusion that the children "deserve a better life" and that their best chance to grow into happy, productive adults will be accomplished only through permanent separation from mother. We are, of course, ever mindful of the wise counsel of our predecessor, Judge Woodside, who cautioned:
The family is an institution which preceded governments. Its sanctity was universally recognized before judges or statutes or welfare organizations were known to man. The right of a child to a mother and a mother to a child are rights created by natural law. They are rights attributable to the nature of mankind rather than to the enactments of law.
...
A child cannot be declared "neglected" merely because his condition might be improved by changing his parents. The welfare of many children might be served by taking them from their homes and placing them in what the officials may consider a better home. But the Juvenile Court Law was not intended to provide a procedure to take the children of the poor and give them to the rich, nor to take the children of the illiterate and give them to the educated, nor to take the children of the crude and give them to the cultured, nor to take the children of the weak and sickly and give them to the strong and healthy.
In Re Rinker, 180 Pa.Super. 143, 117 A.2d 780, 783 (1955).
¶ 19 It is precisely because these children, under their natural mother's stewardship had been, and are being, denied their right to develop into competent adulthood that we readily affirm the order in this case.
¶ 20 The order which involuntarily terminated mother's parental rights to M.G. and J.G. is affirmed.
NOTES
[1] A similar issue, purportedly raised in In re J.D.W.M., 810 A.2d 688 (Pa.Super.2002), was found by a panel of this court to be waived and without factual support in any event.
[2] There are no issues before us regarding this disabled child who now resides full-time in a facility for emotionally, physically and mentally handicapped children.
[3] The parental rights of father, who was convicted of corrupting the morals of an unrelated minor and who is serving a sentence of incarceration, were terminated by consent and there are no issues before us regarding that determination.