J-A28036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.K., MOTHER | |
| | No. 1599 EDA 2016 |

Appeal from the Order Entered April 27, 2016
in the Court of Common Pleas of Delaware County
Orphans' Court at Nos.: 0017-2015
FID: 23-FN-000008-2013

BEFORE: PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED JANUARY 24, 2017**

Appellant, S.K. (Mother), appeals from the order and decree of the Court of Common Pleas of Delaware County, entered April 27, 2016, resulting in the involuntary termination of her parental rights to her daughter, S.K. (Child), born in September of 2006. Mother challenges the sufficiency of the evidence. We affirm.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of Child's father, R.E. He did not appeal that termination or participate in this appeal.

We derive the facts of this case from the trial court's findings of fact (**see** Adjudication, Findings of Fact, 4/24/16, at unnumbered pages 1-8), and our independent review of the certified record.[2]

On January 4, 2013, Delaware County Children and Youth Services (CYS) received reports that Child, age six at the time, was home alone during a school day. The Upper Darby Police Department found Child alone on a mattress on the floor near an electric space heater.

Further investigation revealed that Mother had gone to New York City for the day. It turned out that she had done this several times before. (**See id.** at 1). When Mother returned from New York City, the police arrested her for endangering the welfare of a minor. That same day she signed a voluntary placement agreement, and Child was temporarily placed at Christ's Home for Children in Warminster, PA.

On January 29, 2013, the trial court found that Child was without proper parental care and control, and adjudicated her dependent. CYS placed Child with relatives. Child has remained in the legal custody of CYS since the original placement on January 4, 2013.

Mother often proved to be uncooperative with CYS and other service providers. Sometimes she was argumentative. She refused to sign appropriate documentation because she denied the underlying factual

---

[2] We note for completeness and clarity that, although dated 4/24/16, the adjudication was time stamped 4/25/16, and docketed on 4/27/16.

- 2 -

allegations. She accused the staff at Christ's Home of fabricating a confrontation by her. On July 16, 2014, the trial court, after hearing evidence of Mother's failure to make progress toward her goals for reunification, changed Child's permanency goal from reunification to adoption. (*See id.* at unnumbered page 5, ¶ 40).

On or about March 2, 2015, CYS filed a petition to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). On November 2, 2015, the court held a hearing on that petition.[3]

CYS had begun to provide services to Mother and Child when the trial court placed Child in the physical and legal custody of CYS on January 4, 2013. As part of that process, CYS requested a psychological evaluation of Mother to address concerns about Mother's mental health. Dr. Dybner-Madero subsequently evaluated Mother and concluded that she had significant emotional issues. She testified that she recommended that Mother undergo an overall psychiatric evaluation, and participate in individual therapy as well as a parenting course. (*See* N.T. Hearing, 11/02/15, at 35-36). CYS regularly attempted to consult with Mother

---

[3] Testifying for CYS at that hearing were supervising caseworker, Kiesha Durrant; psychologist Karen Dybner-Madero, Psy.D.; and Stephen Mechanick, M.D. a psychiatrist. The trial court found that Mother received proper notice of the hearing. Nevertheless, Mother failed to appear, claiming that she did not want to attend without new counsel. (*See* N.T. Hearing, 11/02/15, at 5-12).

regarding her mental health issues, Dr. Dybner-Madero's recommendations, and the services available to Mother. Mother, however, refused to cooperate with CYS, alleged that Dr. Dybner-Madero was biased, and initially refused CYS' request for a psychiatric evaluation.

Subsequently, however, Mother informed CYS that she had undergone a psychiatric evaluation at Northwestern Human Services (NHS) on April 18, 2013.[4] The NHS evaluation reported that Mother had a history of post-traumatic stress disorder (PTSD), and panic attacks. The evaluator recommended that Mother attend therapy.

Dr. Mechanick testified that he conducted a psychiatric evaluation of Mother on June 10, 2013. (**See id.** at 13). Dr. Mechanick diagnosed Mother as suffering from personality disorder with paranoid and narcissistic features. The narcissistic personality traits that Mother exhibited included a sense of being special, a sense of entitlement, a lack of empathy, and arrogant, haughty behaviors and attitudes. The paranoid personality traits that Mother exhibited included her suspicion that others are exploiting and harming her, and a reluctance to provide information because of fear that it

---

[4] While the trial court references the NHS evaluation, the report itself is not included in the record before us. (**See** Findings of Fact, at unnumbered page 4, ¶ 27).

would be used against her. Dr. Mechanick recommended that Mother participate in individual counseling.[5]

Mother completed the Darby Parents and Children Together Program. (**See id.** at 89). CYS then referred Mother to the Elwyn Visitation Program in May of 2014. Elwyn discharged Mother from that program on July 16, 2014, caused by Mother's lack of cooperation, inappropriate comments she made during visitation and her intermittent refusals to engage with Child. As part of the Elwyn Visitation program CYS had offered Mother visits in her home, but she declined. (**See id.** at 90; **see also** Findings of Fact, at unnumbered page 5, ¶ 52, 53).

In November of 2014, Child relocated to the State of Georgia to live with her maternal aunt. With one exception, Mother refused CYS' offer to pay her travel expenses to visit with Child in Georgia once each month. The last time Mother visited with Child was in February of 2015.

Mother refused to consult with CYS about her Family Service Plan, that included obtaining suitable stable housing and mental health treatment. Instead of acknowledging the issues, Mother blamed CYS and others for her difficulties. Ms. Durrant, the supervising caseworker, testified that "[Mother] would meet with us periodically throughout the history of the case where we

---

[5] Mother apparently claimed that she was seeking mental health treatment on her own, but failed to provide CYS with treatment records. (**See** N.T. Hearing, at 117).

would discuss recommendations and services with her and, at times, she would be extremely argumentative and just refuted some of the recommendations and some of the things in our Court Order and our family service plan during those meetings." (N.T. Hearing, at 98-99). Despite being offered and provided extensive agency services, Mother has failed to seek treatment to correct the mental health issues that are preventing her from properly parenting Child.

Child has lived in Georgia in foster care with her maternal aunt, a kinship adoptive resource, since November 22, 2014.[6] Child's maternal grandmother and her maternal uncle have also relocated to Georgia to be available as additional resources to provide support, love and an extended family for Child. Child has bonded with her maternal aunt. Kiesha Durrant, the supervising caseworker, testified that Child is thriving in the care of her aunt and that in her opinion it would be in the best interest of Child to remain in her aunt's foster care and be adopted. (*See id.* at 101-02).

On April 27, 2016, the trial court entered its adjudication terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5),

---

[6] From her adjudication of dependency until November 22, 2014, Child resided with her maternal grandmother.

(8), and (b).[7]  Mother filed a timely notice of appeal on May 25, 2016, and her concise statement of errors complained of on appeal on June 9, 2016.[8]

Mother raises one question on appeal:

1.  Whether the trial court abused its discretion in granting the Petition for Involuntary Termination of Parental Rights when there was insufficient evidence presented to support same and CYS failed to establish its burden of proof by clear and convincing evidence[?]

(Mother's Brief, at 7).

Our scope and standard of review are well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions.  However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings.  The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Furthermore,

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

_____

[7] We note for clarity that the Adjudication itself is dated "4/25/16."

[8]  We accept Mother's late filing of her concise statement and decline to quash or dismiss on the basis of the late filing.  There was no objection or claim of prejudice from CYS for the late filing.  *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009).

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). To affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511 of the Adoption Act, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the

- 8 -

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

\*     \*     \*

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct,

weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations omitted).

Additionally,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.*, *N.M.*, 856 A.2d 847, 854-55 (Pa. Super. 2004), *appeal denied*, *In re Adoption of N.M.B.*, 582 Pa. 718, 872 A.2d 1200 (2005) (citations omitted).

The Adoption Act also provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620

- 10 -

A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

Here, preliminarily, we must address the defects of Mother's brief. Aside from two cursory references, for general principles not in dispute, Mother's argument section contains no citation to any legal authority in support of its claims of insufficiency. (*See* Mother's Brief, at 11, 14; *see also id.* at 11-16).

Accordingly, Mother's brief fails to develop an argument which links her claim of insufficiency and the facts of her case to pertinent supporting authority. (*See id.* at 11-16). Mother's argument thus fails to support her conclusion that the trial court erred in terminating her parental rights. She has, therefore, waived that argument. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted). "[T]he 'argument' section of an appellate brief must contain a full discussion of the points

- 11 -

raised accompanied by citation to pertinent authority." ***In re Child M.***, 681 A.2d 793, 799 (Pa. Super. 1996), *appeal denied*, 686 A.2d 1307 (Pa. 1996). Mother has waived her argument. Moreover, it would not merit relief.

Mother does not deny the underlying facts of record. Instead, Mother's brief merely reviews certain aspects of the testimonial evidence, rejects the assessment of the trial court, reinterprets facts in a manner more favorable to her, and asks us to reach a different conclusion.[9]

This we may not do. We are bound by the findings of the trial court which are supported in the record. We may reject the conclusions of the trial court only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings. ***See In re M.G.***, ***supra*** at 73-74.

Furthermore, except for mere bald denials, Mother presents nothing in her argument to suggest that the trial court reached its conclusions through errors of law or that those conclusions are unreasonable in light of the evidence presented. (***See*** Mother's Brief, at 11-16).

Our independent review of the record confirms that CYS presented sufficient credible evidence to support the trial court's determination to terminate Mother's parental rights. Doctors Mechanick and Dybner-Madero

---

[9] For example, Mother does not directly deny mental health incapacity, but maintains, notably without any authority, that such incapacity "is not a complete bar to her ability to parent[.]" (Mother's Brief, at 12).

both testified that Mother suffers from mental health issues that prevent her from successfully parenting Child. (***See*** N.T. Hearing, at 18, 49). Ms. Durrant testified that Mother has rejected CYS' efforts to provide services to her, including mental health treatment. (***See e.g.***, ***id.*** at 85-89, 91-92).

The record also includes testimonial evidence that Child is thriving in pre-adoptive kinship care with her maternal aunt and an extended family that includes a maternal uncle and her maternal grandmother. (***See id.*** at 101). Ms. Durrant further testified that in her expert opinion it was in the best interest of Child to remain in foster care and be adopted by her maternal aunt. (***See id.*** at 101-02). Dr. Dybner-Madero performed a bonding evaluation and testified that Child had bonded in a positive relationship with her maternal aunt. (***See id.*** at 58).

Accordingly, we affirm the order (and decree) of the Court of Common Pleas of Delaware County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/24/2017

- 13 -