J-S06031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1405 WDA 2024 |

Appeal from the Order Entered September 27, 2024
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CP-02-AP-0000143-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: E.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1406 WDA 2024 |

Appeal from the Order Entered September 27, 2024
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: CP-02-AP-0000144-2023

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: MARCH 20, 2025**

C.T. (Father) appeals from the orders terminating his parental rights to his twin children, G.H. and E.H (Children).[1] After careful review of the record, briefs, and prevailing law, we affirm on the basis of the orphans' court's thorough and well-reasoned opinion.

---

[1] The orphans' court also terminated the parental rights of Children's mother, D.H. (Mother), who has not appealed.

*BACKGROUND*

Children were born in November 2021. Less than two months later, they were placed in emergency custody with the Allegheny County Office of Children, Youth & Families (CYF). The orphans' court explained:

> [C]hildren presented to Children's Hospital of Pittsburgh on January 5, 2022. G.H. was admitted and placed in critical condition. On January 6, 2022, CYF received a ChildLine reported as a "near fatality[."] CYF sought and was granted [emergency custody]. On January 7, 2022, KidsVoice was appointed as Guardian *ad litem* (GAL) for the [C]hildren.
>
> CYF received two explanations of [C]hildren's injuries from the parents. Father told CYF he was the sole caregiver on the night of the injury. Father had placed [C]hildren in the middle of a full-sized bed. Father then went back and forth between the bathroom, where he was smoking Black and Mild cigars while listening to music, and the bedroom where [C]hildren were. As he was in the bathroom smoking, he heard [C]hildren crying. He went to the bedroom and provided a pacifier to soothe them. Father then returned to the bathroom and then heard … one of the babies cry again. Father walked in the dark towards the bedroom, and upon entering, he stepped on G.H., who was on the floor. Father picked her up to soothe her and then placed her back onto the bed. Father again returned to the bathroom. Father said he then heard E.H. cry, and thus, returned to the room only to notice an unresponsive G.H. not breathing. Father took her to a bathtub and splashed cold water on her, which had no effect. Father eventually brought G.H. to Mother and called 911. Father explained to CYF that [C]hildren, who at this time were five weeks old, were placed in the center of the bed and that G.H. rolled off of the bed by herself.
>
> A shelter care hearing took place on January 10, 2022. The court found that G.H. was severely injured. G.H. suffered a traumatic brain injury and retinal bleeding. G.H. developed seizures, had brain swelling, and was on a ventilator. At the time of the shelter care hearing, there was no release date. E.H. was examined at the hospital and was found to have fractured ribs. The City of Pittsburgh Police had an open investigation at the time of the hearing.

> The court found that Father had a history of mental health issues. Additionally, Father's whereabouts at that time were unknown, as it was unclear if he returned to [his hometown,] Jacksonville, North Carolina. The court considered placement needs of [C]hildren. The court considered relatives, but they were either unwilling or unable to care for [C]hildren.

Orphans' Court Opinion (OCO), 11/22/24, at 4-5 (footnotes omitted).

Children were adjudicated dependent on March 9, 2022. The court ordered Father to complete a drug and alcohol evaluation and follow recommended treatment; undergo a mental health evaluation; maintain contact with CYF; participate in parenting classes; attend supervised visitation; and complete a domestic violence program. As Father had left Pennsylvania, CYF "initially referred Father to a number of agencies in North Carolina" to obtain services. N.T., 9/26/24, at 137. The CYF caseworker, Stacey Policicchio, "had located a parenting program, a place where [Father] could get a drug and alcohol evaluation, and there was a place where he could get batterer's intervention as well." *Id.* at 137-38. However, Father did not engage with service providers in North Carolina. *Id.* at 138. According to Ms. Policicchio, "Father said they didn't work," and she "ended up referring Father to" virtual programs. *Id.* Ms. Policicchio relayed that Father did not participate in the virtual programs and did not explain his failure to do so. *Id.*

In June 2022, Children were placed in the foster home of L.L. and Z.L. (Foster Parents), who continue to care for Children. *Id.* at 148. The foster care specialist, Heather Garcia, described Foster Parents as "an appropriate pre-adoptive resource" for Children. *Id.* at 184.

On January 9, 2023, the Commonwealth charged Father with three counts of aggravated assault and one count of endangering the welfare of a child in connection with Children's injuries. *See* 18 Pa.C.S. §§ 2702(a)(1), (8), (9), and 4304(a). Approximately six months later, in July 2023, Father was extradited from North Carolina to Pennsylvania. *See* OCO at 8. At the time of this writing, the docket at CP-02-CR-0005809-2023 indicates that Father is incarcerated and awaiting a non-jury trial scheduled for April 23, 2025.

On June 20, 2023, CYF petitioned to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b). The orphans' court held two days of hearing on June 21, 2024 and September 26, 2024. On September 27, 2024, the court entered the orders terminating Father's parental rights. Father filed notices of appeal and concise statements of errors pursuant to Pa.R.A.P. 1925. On December 4, 2024, this Court consolidated the appeals *sua sponte*.

> Father presents two issues for review:
>
> 1. Did the [orphans'] court abuse its discretion and/or err as a matter of law by involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?
>
> 2. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of [Children] pursuant to 23 Pa.C.S. § 2511(b)?

Father's Brief at 3.

## DISCUSSION

Father asserts that "[o]ther than [his] incarceration and distance while in North Carolina, CYF failed to prove Father's inability to care for the Children." *Id.* at 13. He states that he "repeatedly expressed a strong willingness to cooperate with CYF to attempt to resolve outstanding goals." *Id.* Father further claims that Children "have a meaningful relationship with Father which should be preserved for the benefit of the Children." *Id.* at 14.

To the contrary, CYF argues:

While in North Carolina, Father was provided with numerous services to assist him with his court ordered goals, yet he never completed any of them. He has not seen the Children for well over a year. There is no significant bond between him and his Children. However, the Children do have a strong bond with their pre-adoptive [F]oster [P]arents, who provide safety and stability. After two and a half years, Father is no closer to reunification than he was at the time of [Children's] removal. The Children deserve permanency through adoption.

CYF's Brief at 14.

Children's counsel similarly argues "it is unlikely Father will be able or willing to remedy the conditions" which led to Children's placement "within a reasonable period of time." Participant's Brief at 11. Counsel states that Children do not have a "necessary and beneficial" bond with Father, and "are in pre-adoptive placement, where they are thriving and where all their needs, including their behavioral health needs, are being met." *Id.* at 11-12.

In considering Father's issues, we recognize:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

- 5 -

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized [an appellate court's] deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up). The orphans' court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

The Adoption Act provides for termination of parental rights at 23 Pa.C.S. § 2511. The orphans' court must first determine whether there are grounds for termination under Section 2511(a). The evidence must be clear and convincing. *See In re T.S.M.*, *supra*. If the court finds grounds for termination under Section 2511(a), it considers a child's needs and welfare pursuant to Section 2511(b). This Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Our review reveals that Father's issues lack merit. For instance, the orphans' court properly found grounds for termination under 23 Pa.C.S. § 2511(a)(2) (providing grounds for termination where the "repeated and

continued incapacity, abuse, neglect, or refusal to parent has caused the child to be without essential parental care … and the conditions … cannot be remedied"). The CYF caseworker, Ms. Policicchio, testified that approximately one month after Children's injuries, in February of 2022, Father left Pennsylvania and, "[i]nitially[,] Father's whereabouts were unknown." N.T., 11/26/24, at 139. When Father was located in North Carolina, CYF referred him to local and virtual services. Ms. Policicchio testified that despite the referrals, "Father hasn't had any compliance with his court-ordered goals." *Id.* at 137.

In addition, the orphans' court observed that "Father's sole reason for returning to Allegheny County was not to care for [C]hildren and to parent; rather, it was by extradition warrant to face criminal charges for the alleged assaults [of Children]." OCO at 14 (footnote omitted). The court cited numerous witnesses and testimony in concluding that evidence "clearly established … Father [is] unable to provide essential care for [C]hildren and fulfill his parental responsibilities." *Id.* at 20.

With respect to Children's needs and welfare under Section 2511(b), the orphans' court "heavily relied on the record as a whole." *Id.* at 22. The court also "evaluated the needs and welfare of [G.H. and E.H.] individually." *Id.* The court "found no evidence of any bond between Father and each child," and explained that it considered "the nature and quality of contact between Father and each child, [and] the testimony of CYF caseworker [Ms.] Policicchio." *Id.* Notably, Ms. Policicchio testified:

I've observed [F]oster [P]arents. [F]oster mom [was] the primary caregiver through most of the time that I had the case….

Foster mom just did a wonderful job meeting [Children's] needs. She got a lot of special equipment for [G.H]. She was very patient. [C]hildren are extremely comfortable with her. They're happy. They smile a lot. I don't have any concerns.

N.T., 9/26/24, at 156. Ms. Policicchio opined that Children "have a bond" with Foster Parents, who meet "[a]ll of their needs." *Id.* at 166-67.

The orphans' court further credited the testimony of psychologist, Dr. Eric Bernstein, and foster care specialist, Ms. Garcia, in concluding termination would meet Children's needs and welfare. *See* OCO at 23-24. The court explained:

[C]hildren deserve permanency. In this case[,] [C]hildren have been out of Father's care for thirty-three (33) months. … The court finds that a strong and positive bond does exist with [F]oster [P]arents. The court further finds that the relationship between [F]oster [P]arents and [C]hildren meet[s Children's] needs and welfare, and that termination of Father's parental rights is in [C]hildren's best interests.

The Commonwealth has an interest not only in family reunification, but also [in C]hildren['s] right to a stable, safe and healthy environment.

*Id.* at 25 (citations omitted).

The orphans' court did not err or abuse its discretion. As the Honorable David L. Spurgeon, sitting as the orphans' court, has authored a comprehensive opinion detailing the decision to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8) and (b), we adopt the opinion in affirming the orders terminating Father's parental rights.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/20/2025