J-A12030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 87 EDA 2025 |

Appeal from the Decree Entered December 10, 2024
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2024-00024

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

DISSENTING MEMORANDUM BY DUBOW, J.:      **FILED OCTOBER 28, 2025**

In my view, the Majority oversteps the boundaries of our well-settled standard of review and impermissibly substitutes its judgment for that of the trial court.  I, therefore, respectfully dissent.

In cases involving the involuntary termination of parental rights, our review is limited to determining whether the trial court's conclusion is supported by competent evidence.  ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021).  When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them.  ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** (citation omitted).  "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial

court's decision, the decree must stand." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). Importantly, we may not reverse "merely because the record would support a different result." **T.S.M.**, 71 A.3d at 267. Moreover, we give great deference to the "trial courts that often have first-hand observations of the parties spanning multiple hearings." **Id.** "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Rather than focusing on whether the record before this Court supports the trial court's factual findings, the Majority underscores what it perceives to be deficits in the record, challenges the trial court's credibility determinations, condemns the lack of expert testimony, criticizes the legal strategy of both Child's legal counsel and Child's guardian *ad litem* ("GAL"), and places great weight on the fact that Child is not currently living in a pre-adoptive home.

First, the Majority disapproves that the "dependency file" is not part of the certified record. Majority Memo. at 2 n.3, 5 n.8, 6, 16-17. This is of no moment. "Termination proceedings often occur simultaneously with dependency proceedings, but these two types of proceedings remain distinct, with their own docket numbers, records, and divisions within the Court of Common Pleas." **Interest of S.S.**, 252 A.3d 681, 688 (Pa. Super. 2021). It is not the role of this Court to lament that the "dependency file" is not part of

the certified record, but, rather, to determine whether the certified record in the termination proceeding supports the trial court's disposition.[1]

Next, the Majority challenges the trial court's decision to credit Ms. Bryant's testimony because Ms. Bryant was the assistant director of WCCYS, had not had recent contact with Child or Father, and gave some one-word answers. Majority Memo. at 22. The Majority also strongly suggests that "the court should have sought testimony from Child's treating professionals" and "should have at least considered ordering a formal bonding analysis." *Id.* at 23. It is the trial court's role, not the role of this Court, to make credibility determinations. *In re M.G.*, 855 A.2d at 73-74. I remain unpersuaded by the Majority's cited reasons for concluding that the record does not support the trial court's credibility determination.

Moreover, contrary to what the Majority suggests, "[i]n analyzing the parent-child bond, the [trial] court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert." *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008). "Furthermore, the [trial] court is

---

[1] Moreover, we note that the Rules of Evidence apply to termination of parental rights proceedings. *See* Pa.R.E. 101(a) (indicating that the "rules of evidence govern proceedings in all courts of the Commonwealth of Pennsylvania's Unified Judicial System, except as otherwise provided by law"); *see also, e.g., In re A.J.R.-H.*, 188 A.3d 1157, 1171-73 (Pa. 2018) (vacating decree terminating parental rights because decree was based upon *en masse* introduction of 167 exhibits with multiple layers of hearsay over parent's hearsay objection). The record from the dependency proceedings often contains multiple levels of hearsay and its admission into evidence in a termination proceeding can be reversible error if all parties do not agree to its admission or if the moving party fails to prove an exception to the prohibition against hearsay.

free to rely upon the assessments of social workers and caseworkers" with regards to bond. *In re Adoption of J.N.M.*, 177 A.3d 937, 944–45 (Pa. Super. 2018). Once again, the Majority is focused on what is not in the certified record rather than if the record supports the trial court's findings.

The Majority also criticizes the legal strategy of both Child's legal counsel and Child's GAL and their failure to provide the court with information regarding Child's preference about being adopted. Majority Memo. at 7, 22-23. Our Supreme Court has explained, "while an appellate court should verify that the [trial] court appointed counsel to represent the child's legal interests, it may not assess *sua sponte* the performance of that representation." *In re Adoption of K.M.G.*, 240 A.3d 1218, 1224 (Pa. 2020). Further, the Supreme Court has rejected the "*sua sponte* review of whether counsel placed the child's interest on the record" as well as the "underlying assumption that the absence of a child's preference on the record equates to counsel's failure to ascertain the child's preferred outcome or to provide effective representation of his or her client." *Id.* at 1238. The Supreme Court explained:

> Children for whatever reason may understandably resist stating whether their parents' rights should be terminated and may be averse to declaring their preference between their natural and foster parents. While we recognize that it may be a best practice for a child's legal counsel to divulge the child's preferences in order to advocate for their client's preferred outcome, we find nothing in the language of the Adoption Act requiring that their preference be placed on the record, which instead only requires that the child be appointed counsel. Moreover, we observe that the child's legal counsel has a duty of confidentiality to their client, the child, such that they should not be compelled to disclose the child's preferences. We are thus wary to create a bright-line rule

requiring counsel and the courts to place the children's preferred outcome on the record as we are concerned by both the potential violation of a child's attorney-client privilege and with the real specter of placing unconscionable stress on a child by mandating that her feelings regarding her parents and caretakers be made public and permanently enshrined in the record.

*Id.* at 1237-38. Accordingly, I disagree with the Majority that the failure to place Child's preference on the record supports a reversal in this case.

Finally, the Majority places great weight on the fact that the Child is not currently placed in a pre-adoptive home. Majority Memo. at 24-26. This Court has clarified that the "termination statute does not require children to be placed in a pre-adoptive home as a precondition to termination of parental rights." *In re K.C.F.*, 928 A.2d 1046, 1053–54 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511). Moreover, the Majority notes that Child is above thirteen years of age and will eventually have to consent to adoption pursuant to 23 Pa.C.S. § 2711. Majority Memo. at 24-25. However, while potentially relevant, a child's consent to adoption is not a required element to the involuntary termination of parental rights under Sections 2511(a) and (b). *In re E.J.C.*, 335 A.3d 1222, 1235 (Pa. Super. 2025). On the contrary, "Section 2511 set[s] forth the relevant grounds required for termination, which does not include Section 2711 consent." *Id.*

Bearing in mind our required standard of review, I discern no abuse of discretion in the court's decision to terminate Father's parental rights under Section 2511(a)(1). With respect to Section 2511(a)(1), the trial court determined, based on Ms. Bryant's testimony, that

the parenting deficits that led to the removal of [Child] from the care of [] Father still existed and were not likely to be remedied within a reasonable period of time. It is evident that Father had not been able to maintain custody and control of [Child] and is not able to progress toward alleviating the circumstances that led to [Child's] placement with [the Agency], such as being a law[-]abiding citizen, supporting [Child] and being a safe, responsive parent. [Child], who was 12 years old at the date of the hearing, deserves permanency.

Trial Ct. Op. at 3.

Based on my review, I conclude that the trial court properly exercised its discretion in terminating Father's parental rights pursuant to Section 2511(a)(1). Ms. Bryant's unrebutted testimony established that Father had a history of domestic violence, substance abuse, and incarceration. *Id.*; N.T. Hr'g at 8, 11. Additionally, although Father attended visits with Child following the commencement of the dependency proceeding in December 2022, he had not had contact with Child in a year prior to that proceeding and has never been a full-time parent to Child. N.T. Hr'g at 8, 17. The record supports the court's finding that Father has not made progress towards being a safe, supportive, and responsive parent. Trial Ct. Op. at 3.

I find that the record supports the trial court's findings and I decline to usurp the court's credibility determinations or reweigh the evidence. Accordingly, the trial court properly concluded that Father had failed to provide essential parental care, control, and subsistence to Child, and that Father could not remedy the conditions leading to placement within a reasonable period of time pursuant to Section 2511(a)(1). Unfortunately, the record is clear that between the time that the trial court adjudicated the Child

dependent and the termination hearing, Father had not demonstrated the ability to provide safety, security and stability for the child on a full-time basis and thus, Child could not have been safely reunified with Father.

I likewise discern no abuse of discretion in the trial court's conclusion that termination was in Child's best interests pursuant to Section 2511(b). The court found that termination was in Child's best interest "because it would best serve [Child's] developmental, physical, and emotional needs and welfare." Trial Ct. Op. at 4. The court found credible Ms. Bryant's testimony that, although Father and Child had a bond, she "believed it would be in [Child's] best interest for the [c]ourt to sever that bond." *Id.* at 3. The court opined that, "[a]lthough Father and [Child] have had remote visits via Zoom during Father's incarceration, Father has not been able to effectively and appropriately provide [Child] with his parental needs[,]" that Father confirmed that he had never sought custody of Child prior to Child's placement with the Agency, and that Child would not be able to live with Father immediately upon parole because his housing needed renovations and did not have a separate bedroom for Child. *Id.* at 4. Finally, the court noted Ms. Bryant's testimony that the Agency "had identified a family as a likely candidate to adopt [Child], which would bring security and stability to [Child's] life." *Id.*

The record supports the trial court's findings. Although Ms. Bryant testified that Father and Child have a bond, she also opined that severing the bond would be in Child's best interest. N.T. Hr'g at 11-12. In addition, the record supports the court's finding that termination would be in Child's best

interest because the evidence established that Child's relationship with Father has lacked stability and consistency due to Father's intermittent presence in Child's life. The court also observed that the potential adoptive resource could provide that permanency and stability to Child. Once again, I decline to usurp the trial court's credibility determinations or reweigh the evidence. Accordingly, I discern no abuse of discretion in the court's conclusion that termination of Father's parental rights is in Child's best interest.

Following my review of the issues raised in Attorney Burlein's **Anders** brief, I agree that the trial court did not abuse its discretion in terminating Father's parental rights. In addition, my independent review of the proceedings reveals there are no issues of arguable merit to be raised on appeal. Accordingly, I would grant Attorney Burlein's petition to withdraw as counsel and affirm the decree terminating Father's parental rights to Child pursuant to Sections 2511(a)(1) and (b). As stated above, we may not reverse "merely because the record would support a different result" and I decline to do so. **See T.S.M.**, 71 A.3d at 267.