J-S83031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF S.A.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.W., MOTHER | |
| | No. 3092 EDA 2017 |

Appeal from the Decree entered August 22, 2017,
in the Court of Common Pleas of Montgomery County,
Orphans' Court, at No(s): 2017-A0011.

| | |
|---|---|
| IN RE: ADOPTION OF J.M.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.L.W., MOTHER | |
| | No. 3092 EDA 2017 |

Appeal from the Decree entered August 22, 2017,
in the Court of Common Pleas of Montgomery County,
Orphans' Court, at No(s): 2017-A0012.

BEFORE: GANTMAN, P.J., OLSON and DUBOW, JJ.

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 17, 2018**

In these consolidated appeals, K.L.W. ("Mother") appeals from the final decrees involuntarily terminating her parental rights to her daughters, S.A.W., age nine, and J.M.W., age six, ("Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

In December 2010, the Montgomery Office of Children and Youth (the Agency") became involved with Mother and Children due to Mother's mental health issues and an incident wherein Mother kicked S.A.W., and for which she was arrested.  Thereafter, the Agency put a safety plan in place that provided Mother was not to be left unsupervised with Children.  The Agency supported J.W. ("Maternal Grandmother") in obtaining custody of S.A.W.  After giving birth to J.M.W., Mother's mental health declined and she was psychiatrically hospitalized for several months.  Maternal Grandmother also obtained custody of J.M.W. after her birth.

The Agency placed Children in foster care on July 27, 2011, but returned custody of them to Maternal Grandmother several weeks later because she was able to exclude Mother from the home and otherwise meet the Children's needs.  At that time, the Agency warned Maternal Grandmother that if Mother returned to her home, the Agency was likely to become involved again because of Maternal Grandmother's struggles caring for both Mother and Children.

In February 2016, the Agency again took custody of Children after receiving multiple referrals regarding the family.  Mother was again residing

in the home and the referrals indicated physical conflicts in the home, as well as concerns regarding the condition of the home and possible neglect of Children. The Agency offered services to Mother, and Mother was able to complete some of her Family Service Plan goals. Nevertheless, Mother was unable to demonstrate an ability to care for her own needs and the needs of Children.

On February 2, 2017, the Agency filed a petition to terminate Mother's parental rights to Children, as well as a petition to terminate the parental rights of D.W., J.M.W.'s biological father.[1] The Orphans' Court held a permanency review hearing for J.M.W.'s biological father and a termination of his parental rights hearing on June 21, 2017. Although Mother's hospitalization prevented her from attending this hearing, the court denied her counsel's request to continue the matter. At this hearing, the court heard evidence from the Agency's caseworkers, members of the police regarding multiple calls to Maternal Grandmother's residence, and a psychiatrist who was treating J.M.W. J.M.W's father also testified and presented testimony from Maternal Grandmother.

Mother was present for an August 22, 2017 hearing regarding the termination of her parental rights. At this time, the Orphans' Court placed on the record the fact that it had interviewed Children in chambers on June 15, 2017. The court also incorporated the testimony from the June 21, 2017

---

[1] K.J.G., S.A.W.'s biological father, had consented to her adoption.

hearing. Mother then testified on her own behalf. The Orphans' Court issued its opinion from the bench, in which it stated its reasons for terminating Mother's parental rights to pursuant to 23 Pa.C.S. §2511(a)(1),(2), (5), and (b). This timely appeal by Mother follows.

**ISSUES ON APPEAL**

Mother raises the following issues on appeal:

1. Whether the Honorable Court below committed an error of law and/or abuse of discretion when it held that [the Agency] had proved by "clear and convincing evidence" that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S. §2511(a)(1).

2. Whether the Honorable Court below committed an error of law and/or abuse of discretion when it held that [the Agency] had proved by "clear and convincing evidence" that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S. §2511(a)(2).

3. Whether the Honorable Court below committed an error of law and/or abuse of discretion when it held that [the Agency] had proved by "clear and convincing evidence" that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S. §2511(a)(5).

*See* Mother's Brief at 4-5.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or

abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

a)   The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to provide safety, security and stability for the child affirmatively and consistently:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.*

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *Id.*

In the instant case, the trial court properly concluded that the Agency met the requirements of Section 2511(a)(1). The Orphan's Court found that, in the relevant period prior to the Agency filing the TPR petition, indeed for

the Children's entire lives, Mother has never independently provided parental care or duties. The court explained:

> Even where a parent desires to preserve a parental role or relationship in a case where the parent is incapable of providing basic necessities and will continue to suffer such mental incapacity, the focus of the Court must not be on the parent's wishes or desire but whether the parent can adequately meet the children's needs for security, safety, permanency and well-being.
>
> In this case, [Mother] has not been able to sustain herself and live independently and has not been able to meet the needs of [Children] as a parent throughout their lives. From 2010 until 2012, when [the Agency] first opened a case to provide services to this family, [the Agency] established a safety plan for [Children] that assured that [they] would not be left unsupervised with [Mother]. [Maternal Grandmother] had custody of [Children] from that time, from the time in 2012 when [the Agency's] case was closed, that first case, until February of 2016 when [Children] were removed from [Maternal Grandmother's] home and placed in foster care.

N.T., 8/22/17, at 40-41.

Mother summarizes her argument with regard to the Orphans' Court conclusion as follows:

> [Mother] testified that she has been with [Children] since their births. In February of 2016, when [Children] were removed from the home by [the Agency,] physical custody [of them] was with [Maternal Grandmother]. [Mother] was living with [Children and Maternal Grandmother] at that time. [Mother] has complied with the request[s] of [the Agency] including mental health evaluation, mental health treatment and parenting classes. [Mother] has continued to visit with [Children] and is willing and able to continue to raise her children.

Mother's Brief at 7.

Our review of the record refutes Mother's claims. Moreover, her arguments largely focus on the credibility of her own testimony, a determination that we cannot disturb on appeal. *In re M.G.*, *supra*. In addition, the Orphan's Court acknowledged the fact that Mother has lived with [Children] for most of their lives, but did not perform any parental duties. For this reason, the court concluded that the Agency provided clear and convincing evidence to support the termination of Mother's parental rights pursuant to Section 2511(a)(1). The court explained:

> Although [Mother] was for the most of that time a member of the same household, she was not consistently nor did she have custody of or parental responsibility for [Children]. Indeed, [Mother's] presence in the household created problems and increased the conflict and chaos in the home to the detriment of [Children].

> In summary, [Mother] has not been able to sustain and support herself consistently, has suffered from severe mental health issues, which the Court notes she is strenuously attempting to address, and has recently spent quite a bit of time in the hospital and is attempting to achieve stability for herself. Her health issues have resulted in lengthy hospitalization, and she has not been capable of providing for [Children] as a parent. For more than six years, [Mother] has not provided [Children] with a home, food clothing or consistent nurturing or loving environment.

> While [Mother's] recent hospitalization for her mental health concerns is unfortunate and the Court acknowledges that she loves [Children] and doesn't fault her for seeking needed medical care, nevertheless, it is the hospitalization and her absences from [Children's] lives that are relevant to a determination of whether she has or lacks the capacity to provide for [Children] as a parent.

> This Court concludes that [the Agency] has met its burden demonstrating by clear and convincing evidence a basis for terminating the parental rights of [Mother] with respect to

[Children] in that she lacks the capacity to parent [Children] and, as a result, [Children] have been without essential parental care, control or some assistance necessary for their physical and mental well-being, and the conditions and causes of the incapacity cannot or will not be remedied by the parent.

The Court notes that [Mother] has stated passionately how much she loves [Children], which I believe, and that she at this time is intending to get an apartment and wishes to parent [Children] on her own in her new home. However, she having never had sole custody of [Children] and the opportunity and obligations that go with parenting on a full-time basis, I cannot conclude that she's prepared to fulfill those responsibilities or has the capacity to do so.

N.T. 8/22/17, at 41-43.[2]

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and we need not consider the other subsections under Section 2511(a). **B.L.W.**, **supra**.

**Termination Pursuant to Section 2511(b)**

Although Mother does not contest the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), our review of the record supports the court's determination that terminating Mother's parental rights is in the best interest of Children. As the court explained:

In this case, the testimony clearly establishes that although there is affection and [Mother] loves [Children], [she] has not maintained sufficient and consistent contact such that there is a healthy parental bond between [Children] and [Mother].

_____

[2] We note the Orphan's Court did not delineate between sections 2511(a)(1) and 2511(a)(2) in make the above comments and conclusions.

- 10 -

The caseworkers observed that [Children's] needs are met by the foster parents and that [Mother] acted more like an older sister than like a parent.

\*\*\*

[Mother's desire] to start over at this time in each case is insufficient for this Court to have confidence that [she] could meet [Children's] needs for consistent and reliable love, affection, support, structure and responsibility.

I conclude, based upon all of the testimony, that the emotional needs and welfare of [Children] can best be met by termination of the parental rights of [Mother] so that [Children] may be freed for adoption and permanency, and I conclude that [Children] will not suffer a detriment as a result of the termination of [Mother's] parental rights[.]

I do find, based upon the testimony of the caseworkers, that a bond has developed between foster parents and [Children].

N.T., 8/22/17, at 51-53.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/18