J-A20010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF: K.M.L | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.S., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 164 WDA 2020 |

Appeal from the Decree Entered December 30, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
108 In Adoption 2019

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: FILED NOVEMBER 13, 2020

E.S. ("Mother") appeals from the December 30, 2019 decree terminating her parental rights to her daughter, K.M.L.[1] We affirm.

K.M.L. was born in July 2010. The Erie County Office of Children and Youth ("OCY") has been involved with the family since 2015, based upon concerns that Mother and her paramour abused and neglected K.M.L. and her younger half-brother, C.B.[2] In 2016, K.M.L. was diagnosed with attention deficit hyperactivity disorder and anxiety disorder. Similarly, she presents

_____

[1] As the child's father, S.H., is deceased, he was not a party to the involuntary termination proceedings or this appeal.

[2] The agency did not petition to terminate Mother's rights to C.B., who was returned to the care and custody of his biological father during May or June of 2019.

with trauma and significant bonding and attachment problems. She also exhibits substantial behavioral issues, including acting out sexually. OCY provided the family in-home services for approximately two years, and on May 23, 2017, the juvenile court adjudicated K.M.L. dependent due to Mother's failure to follow through with services, and ongoing concerns over domestic violence.

K.M.L. remained in the home until October 1, 2018, when OCY obtained an emergency protective order placing the child in the agency's physical custody. In addition to Mother's continued neglect of the children, their removal stemmed from suspicious[3] bruising around K.M.L.'s eye and unexplained second-degree burns on the palm of K.M.L.'s hand.

The orphans' court succinctly summarized Mother's engagement with the agency over the ensuing year as follows:

> At the time of the [February 4, 2019 permanency review] hearing, [Mother] appeared with counsel. During this review period, the Court found [Mother] had been minimally compliant with the permanency plan, and there was minimal progress toward alleviating the circumstances which necessitated the original placement of the minor child. [Mother] participated in supervised visits with the child, but continued to be inconsistent and had a difficult time engaging with the minor child, requiring redirection from inappropriate discussions with the child. [She] presented at one supervised visit with a swollen and bruised nose, and a report was received on November 8, 2018, regarding ongoing domestic

---

[3] Although Mother claimed that the black eye was the result of K.M.L. wrestling with C.B., the agency was concerned because K.M.L. had a history of similar injuries under suspicious circumstances. Indeed, Mother previously claimed that three separate black eyes were the result of KML running into doorknobs.

violence in the home of Appellant and her paramour, K.B.  The [c]ourt ordered that the minor child was to remain in temporary foster care.  . . .

[Having moved from Erie County to Union County[4] the previous month, Mother] failed to appear for the scheduled hearing [on August 5, 2019,] but her interests were represented by counsel. During this review period, [Mother] continued to be minimally compliant with [c]ourt ordered services.  [She] continued to display a negative attitude towards the minor child[, and] . . . failed to actively participate in any of the services offered to her. Of great concern, [Mother] continued to reside with her paramour, K.B., who was an indicated perpetrator of sexual abuse[against K.M.L.[5]] and who had been alleged to have hit the minor child in the face on three occasions, resulting in black eyes.  The [c]ourt ordered that the minor child was to remain in foster care.  Further, the [c]ourt ordered the permanent placement goal for the minor child to be changed to [a]doption.  It was ordered that OCY was to no longer offer any services to the mother, including visitation. . . .

On October 4, 2019, OCY filed a Petition for Involuntary Termination of Parental Rights (hereinafter "IVT Petition"), seeking to terminate the parental rights of Appellant pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and §2511(b).

Trial Court Opinion, 2/28/20, at 4-5.

_____

[4] Mother neglected to request that the juvenile court transfer services to Union County.  N.T., 12/16/19, at 14.  She has not contacted the child or the agency since relocating, although she reportedly vowed to "fight to get her daughter back."  Id. at 15.

[5] Highlighting that the authorities did not charge K.B. for sexual assault, Mother committedly defended her paramour, even referring to K.M.L. as "a little liar."  N.T., 12/16/19, at 12, 45-46.

During the ensuing evidentiary hearing, Alison Scarpitti, Esquire represented K.M.L.'s legal interest pursuant to 23 Pa.C.S. § 2313(a).[6] Mother, who was represented by counsel, participated by telephone and stipulated to the admission of the July 2019 bonding assessment performed by Peter von Korff, Ph.D. and a July 17, 2019 report from Erie Homes for Children and Adults/Project First Step. OCY presented the testimony of Mary Bliley, the family's caseworker, and Nicole Seelbach, the child's permanency caseworker. In sum, Ms. Bliley testified: 1) Mother failed to address the concerns that necessitated the child's placement; 2) termination of Mother's parental rights would serve K.M.L.'s best interest; and 3) severing the parent/child bond would not affect the child negatively. Similarly, Ms. Seelbach testified that the termination of Mother's parental rights would serve the child's best interest, again without negative effect, even though an adoptive resource has not been identified. She observed that then-ten-year-old K.M.L. has a committed desire to be adopted by "a forever home . . . that will love her." N.T. 12/16/19, at 33.

_____

[6] Attorney Scarpitti informed the court that she discussed the case with K.M.L., who desires to be adopted, and advised the court that she was able to represent the child's legal interests and best interest without conflict. N.T., 12/16/19, at 58-59. See In re Adoption of L.B.M., 161 A.3d 172, 175, 180 (Pa. 2017) (plurality) (pursuant to 23 Pa.C.S. § 2313(a), child subject of contested involuntary termination proceeding has statutory right to counsel who discerns and advocates for the child's legal interests). Attorney Scarpitti filed a brief in this Court in support of the orphans' court decree terminating Mother's parental rights.

On December 16, 2019, the orphans' court granted OCY's petition to terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and § 2511(b). Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal challenging the trial court's determinations under subsections (a)(2), (a)(5), (a)(8), and §2511(b). She reiterates those issues on appeal as follows:

> A. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?

> B. Whether the orphans' court committed an error of law and/or abused its discretion when it concluded that termination of parental rights was supported by clear and convincing evidence pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's brief at 3.[7]

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." Id. "[A] decision may be reversed for an

---

[7] Mother's challenge as to subsection (a)(1) is waived because she failed to preserve this claim in her Rule 1925(b) statement and the orphans' court did not address it. See Krebs v. United Refining Co., 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." Id. The trial court's decision, however, should not be reversed merely because the record would support a different result. Id. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. See In re R.J.T., [9 A.3d 1179, 1190 (Pa. 2010)].

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G. & J.G., 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." In re Adoption of T.B.B., 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Significantly, since this Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of § 2511(a) as well as (b), see In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc), and because Mother waived her challenge to the orphans' court's conclusion that OCY proved the statutory grounds outlined in § 2511(a)(1), we need only address the court's 2511(b) analysis.

The pertinent subsection of the Adoption Act provides as follows:

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

In relation to the needs and welfare analysis, this Court observed,

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa.Super. 2011) (cleaned up).

After a thorough review of the certified record, the pertinent briefs, and the pertinent law, we affirm the involuntary termination decree on the basis of the cogent and well-reasoned opinion entered on February 28, 2020, by the Honorable John J. Trucilla. Specifically, President Judge Trucilla concluded that OCY presented clear and convincing evidence that terminating Mother's

parental rights would best serve K.M.L.'s developmental, physical, and emotional needs and welfare pursuant to § 2511(b). Orphans' Court Opinion, 2/28/20, at 13-15. We adopt President Judge Trucilla's reasoning as our own.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2020